The STATE, ex rel. LIPPITT,

v.

KOVACIC et al.

[Cite as *State, ex rel. Lippitt, v. Kovacic* (1991), 70 Ohio App.3d 525.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 58243.

Decided Jan. 17, 1991.

*Thomas W. Lippitt, pro se.*
*Melody J. Stewart,* Assistant Director of Law, for respondents.

JOHN V. CORRIGAN, Presiding Judge.

## Introduction

On August 11, 1989, relator, Thomas W. Lippitt, petitioned this court for a writ of mandamus to order the city of Cleveland and its police chief, Edward P. Kovacic (hereinafter collectively referred to as "the city") to disclose the following records under the Ohio Public Records Act, R.C. 149.43: the arrest records, the conviction records, the Social Security numbers, and current addresses for Alan Paul Steiger, Rick Mingo, David Brunswick, William Kiraly and Ronnie C. Richardson.

The parties have entered into stipulations concerning the practice of the city in keeping and releasing arrest records. The city has also submitted to the court all disputed records which could come within the scope of Lippitt's request; these include its "soundex" arrest records, its Scientific Investigation Unit cover sheets, FBI "rap sheets," and Ohio Bureau of Criminal Identification and Investigation "rap sheets." The parties have briefed the

core issue: whether the law of privacy or any other federal or state law prohibits the release of any of these arrest histories.

### The Practice of the City

The city maintains several different kinds of arrest histories. First are the booking cards, which apply only to a specific arrest. The city does not deny access to these. Next are the "soundex" arrest records. These records compile a person's arrest history and occasionally dispositions. They may also include other data, such as a physical description, address, date of birth and Social Security number. The raw information is stored in code on index cards in the Police Division's Record File Section. When an arrest record is requested, the code is translated into a list of offenses and dates of arrests. The city has restricted access to these records to law enforcement agencies and the named person or his duly authorized representative. Before the named individual or the duly authorized representative may obtain these records, he must execute an affidavit releasing any right of personal privacy he may have in the "soundex" records.

The city's Scientific Investigation Unit also keeps records listing a person's arrest history. These records usually consist of a cover sheet, which contains biographical data including names of relatives, FBI and BCI "rap sheets," fingerprint cards and sometimes photographs and investigatory reports. The city permits access to these records only for law enforcement purposes.

### Ohio Public Records Law

R.C. 149.43 provides that all public records shall be promptly made available to all persons. Subsection (A)(1) defines a "public record" as "any public record that is kept by any public office * * * except medical records, records pertaining to adoption, probation, and parole proceedings, * * * trial preparation records, confidential law enforcement records, and records the release of which is prohibited by state or federal law." Because of the broad definition of "record" in R.C. 149.011, the parties do not submit that any of the documents in issue are not records.

In *State, ex rel. Beacon Journal Publishing Co., v. Univ. of Akron* (1980), 64 Ohio St.2d 392, 18 O.O.3d 534, 415 N.E.2d 310, and *State, ex rel. Natl. Broadcasting Co., Inc. v. Cleveland* (1988), 38 Ohio St.3d 79, 526 N.E.2d 786, the Ohio Supreme Court established broad rules for examining records for disclosure. Law enforcement records must be disclosed unless they fall within one of the statutory exemptions. The government has the duty to release such records, including those parts of a record which do not fall within an exemption. It further has the burden of proof that the records are excepted from disclosure. If the status of a record is disputed, then the

record must be submitted to the court for individualized inspection. The court is to resolve all doubts in favor of disclosure. If only part of a document is exempt, the court is to redact the exempt part and order the release of the rest of the record.

## The Privacy Issue

■ The city submits that the law of privacy is a state or federal law which prohibits the disclosure of its "soundex" arrest records and its Scientific Investigation Unit records. It notes that various persons have sued governmental agencies for invasion of privacy because confidential records were disclosed. For its own protection, the city seeks the court's guidance. The city also argues that the amorphous constitutional right to privacy grants protection to these records. These arguments are not persuasive.

In *State, ex rel. Cincinnati Post, v. Schweikert* (1988), 38 Ohio St.3d 170, 527 N.E.2d 1230, the Ohio Supreme Court ruled that compilations of public information do not transform a document into "work product" which is exempt from disclosure. *State, ex rel. Outlet Communications, Inc., v. Lancaster Police Dept.* (1988), 38 Ohio St.3d 324, 528 N.E.2d 175, ruled that general arrest records are not exempt from disclosure. Reading these two cases together, the court holds that expanded, compiled arrest histories are public records subject to disclosure. Thus, the law of privacy is not a federal or state law which prohibits the disclosure of "soundex" arrest records or the Scientific Investigation Unit's records.

■ Moreover, claim of a fundamental right of privacy protected by the Constitutions is not well founded. The authorities upon which the city relies do not support that proposition. The United States Supreme Court did not decide *United States Dept. of Justice v. Reporters Committee for Freedom of the Press* (1989), 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774, on constitutional grounds. It decided the issues solely on the rights granted by Congress in the Freedom of Information Act. In fact, the court specifically stated that it was not deciding "the question whether an individual's interest in privacy is protected by the Constitution." Citing *Paul v. Davis* (1976), 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405, the court observed that there is no constitutional right of privacy which would prohibit the publication of the name of an arrested, but untried shoplifter. *Id.,* 489 U.S. at 762, 109 S.Ct. at 1476, 103 L.Ed.2d at 789, fn. 13. Similarly, in *Wilson v. Patton* (1988), 49

Ohio App.3d 150, 155, 551 N.E.2d 625, 629–630, the court stated that arrest records were not protected by a constitutional right to privacy.[1]

■ Finally, the city argues that the names of relatives should be redacted from the Scientific Investigation Unit's cover sheets, pursuant to R.C. 149.-43(A)(2)(d). Releasing the names could risk the physical safety of those individuals. This is a proper concern of the government; the public record law should not be allowed to be used so as to contribute to somebody's death or injury.

■ Redaction, however, by the court is not appropriate in this case. Most, if not all, of the information sought to be exempted is available through other public records, such as birth certificates or marriage licenses. Subsection (A)(2)(d) limits the statute's protection only to witnesses, information sources, victims and law enforcement officers, and the city has not shown that any of the relatives at issue come within any of those categories. Perhaps even more important, the city has not shown that disclosure of the records will really pose a risk to these people.

### Other State or Federal Exemptions

■ The city properly submits that Section 3789g, Title 42, U.S.Code prohibits disclosure of the FBI "rap sheets" and that R.C. 109.57 prohibits disclosure of the Ohio Bureau of Criminal Investigation "rap sheets." Accordingly, pursuant to the incorporation clause of the Ohio Public Records Act, this court orders that those records be redacted in their entirety and not released. Similarly, the FBI and BCI (OSB) numbers are to be redacted from the Scientific Investigation Unit cover sheets. Because the city cited no specific state or federal law to otherwise exempt the cover sheets, they are to be disclosed in their entirety, except as noted above.

Accordingly, this court holds as follows: Document Nos. 1, 2, 3, 4, 8, 9, 13, 14, 15, and 16 (the "soundex" cards and the city arrest records for the five

---

1. The Ohio Public Records Act, unlike its federal counterpart, does not have an exception for unwarranted invasions of personal privacy. Regardless of a person's desire to keep his arrest record private, the balancing between such interests and the need for open government is in the hands of the General Assembly. Given the present Act, this court's establishing a general right of privacy to exempt arrest records would be an unwarranted act of judicial legislation. See *State, ex rel. Clark, v. Toledo* (1990), 54 Ohio St.3d 55, 560 N.E.2d 1313, and *State, ex rel. Multimedia, Inc., v. Whalen* (1990), 48 Ohio St.3d 41, 549 N.E.2d 167.

   Similarly, the city's concerns that disclosure of law enforcement records will compromise the integrity of the criminal justice system are not insubstantial. Judicial fiat, however, is not the proper course of action. Whatever adjustments are necessary to best serve society should be made by the legislature.

individuals) should have been and are to be disclosed in their entirety. Document Nos. 5, 10, and 17 (the Scientific Investigation Unit cover sheets) should have been and are to be disclosed, except the FBI and OSB numbers are to be redacted. Document Nos. 6, 7, 11, 12, and 18 (FBI and BCI "rap sheets") are to be redacted in their entirety and not disclosed.

Lippitt's demand for attorney fees or sanctions is denied. The Ohio Supreme Court has established that the awarding of attorney fees is not mandatory and that the reasonableness of the respondent's position may be considered. *State, ex rel. Multimedia, Inc., v. Whalen* (1990), 48 Ohio St.3d 41, 42, 549 N.E.2d 167, 168. In the present case, the city properly invoked statutory exceptions to protect all or parts of various records which were arguably within the scope of Lippitt's request. Moreover, the city acted prudently in seeking the court's guidance before changing its long-standing practices regarding "arrest records." The city argued in good faith that certain records should be only for law enforcement purposes and that disclosure could infringe on a person's privacy and expose the city to lawsuits.

In conclusion, Lippitt's petition for a writ of mandamus is granted in part and denied in part. Because all of the parties have the right to appeal from this judgment and because public records cases pose unique problems, it is important that the confidentiality of the records be preserved until either the parties exhaust their appeals or all of the parties agree to end the litigation. Accordingly, to preserve the status quo, this court will reseal the records submitted to it.

The court will hold the sealed sets of records during the time of appeal. In the event the parties appeal, the court will forward the sealed sets of records to the Ohio Supreme Court with the rest of the file.

If none of the parties appeal or if all of the parties agree to end this litigation and abide by the judgment of this court, then the respondents will furnish the relator at relator's expense with a copy of the public records in accordance with our findings.

Costs of this action are taxed to the respondents.

*Judgment accordingly.*

PATTON, C.J., and KRUPANSKY, J., concur.